UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 0:21-cv-61848-COOKE/HUNT

JIM ANTONIO ALERS, on his own behalf, and on
behalf of those similarly situated,

      Plaintiff(s),

v.

ROBINHOOD FINANCIAL, LLC, CITADEL
SECURITIES, LLC, APEX CLEARING
CORPORATION, TWO SIGNA SECURITIES,
LLC, WOLVERINE SECURITIES, LLC,
and VIRTU FINANCIAL, INC.,

      Defendants.

_____/

DEFENDANTS' JOINT MOTION TO TRANSFER OR DISMISS

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ................................................................................. 1

BACKGROUND ........................................................................................................ 3

ARGUMENT ............................................................................................................. 4

I.      THE COURT SHOULD TRANSFER THIS CASE TO THE NORTHERN
        DISTRICT OF CALIFORNIA .............................................................................. 4

        A.      This Court Should Exercise Its Discretion to Transfer the Action
                Pursuant to the First-Filed Rule. .................................................... 5

        B.      The Balance of Factors That Courts Consider in Determining Whether
                Transfer is Appropriate Weighs in Favor of Transfer. ................................. 8

                1.      Judicial Economy and the Interests of Justice Favor Transfer. ........... 8

                2.      The Underlying Events Occurred in California, and Witnesses
                        and Evidence are Located There. ....................................................... 9

                3.      Familiarity with the Governing Law Favors Transfer. ..................... 10

                4.      Plaintiff's Choice of Forum and the Relative Means of the
                        Parties Are Neutral Factors. ............................................................. 11

II.     ALTERNATIVELY, THE COURT SHOULD DISMISS PLAINTIFF'S
        SLUSA-BARRED COMPLAINT. ....................................................................... 11

        A.      This Case Is a Covered Class Action under SLUSA. ................................. 12

        B.      Plaintiff Asserts Claims Based on State Common Law. .............................. 13

        C.      Plaintiff's Claims Are Based on Alleged Misrepresentations or
                Omissions, or an Alleged "Manipulative or Deceptive Device." ................ 13

        D.      The Alleged Misconduct Was "in Connection with" the Purchase or
                Sale of "Covered Securities." ...................................................................... 15

III.    PLAINTIFF ALSO FAILS TO STATE AN AIDING AND ABETTING
        CLAIM. ................................................................................................................ 16

CONCLUSION ......................................................................................................... 19

<u>TABLE OF AUTHORITIES</u>

C<span style="font-variant:small-caps">ASES</span>

*Am. Aircraft Sales Int'l, Inc. v. Airwarsaw, Inc.*,
    55 F. Supp. 2d 1347 (M.D. Fla. 1999) ........................................................... 9

*Arnesen v. Am. Home Shield of Fla., Inc.*,
    2012 WL 13024104 (S.D. Fla. July 9, 2012) ................................................. 6

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ..................................................................................... 16

*Banco Indus. de Venezuela, C.A. v. CDW Direct, L.L.C.*,
    888 F. Supp. 2d 508 (S.D.N.Y. 2012) ......................................................... 18

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ............................................................................... 16, 17

*BES Design Build, LLC v. Harrell Design Grp., P.C.*,
    2018 WL 6739069 (S.D. Ala. Oct. 26, 2018) ............................................. 11

*Brandywine Commc'ns Techs., LLC v. AT&T Corp.*,
    2012 WL 1658810 (M.D. Fla. Apr. 25, 2012) ............................................ 10

*Bray v. Bank of Am.*,
    2014 WL 12622468 (M.D. Fla. July 29, 2014) ............................................ 9

*Brown v. Conn. Gen. Life Ins. Co.*,
    934 F.2d 1193 (11th Cir. 1991) ................................................................... 9

*Camoco, LLC v. Leyva*,
    2018 WL 6166302 (M.D. Fla. Sept. 21, 2018) .......................................... 10

*Carucel Invs., L.P. v. Novatel Wireless, Inc.*,
    157 F. Supp. 3d 1219 (S.D. Fla. 2016) ...................................................... 11

*Casey v. U.S. Bank Nat. Ass'n.*,
    127 Cal. App. 4th 1138 (2005) ................................................................... 16

*Cent. Money Mortg. Co. v. Holman*,
    122 F. Supp. 2d 1345 (M.D. Fla. 2000) ...................................................... 8

*Chang v. JPMorgan Chase Bank*, N.A.,
    845 F.3d 1087 (11th Cir. 2017) ................................................................. 18

*Chapman v. Progressive Am. Ins. Co.*,
    2017 WL 3124186 (N.D. Fla. July 24, 2017) .......................................... 5, 6

*Clinton v. Sec. Benefit Life Ins. Co.*,
  2020 WL 6120565 (S.D. Fla. June 29, 2020) ....................................................11

*Collegiate Licensing Co. v. Am. Cas. Co. of Reading, Pa.*,
  713 F.3d 71 (11th Cir. 2013) ........................................................................... 5

*Cont'l Grain Co. v. FBL-585*,
  364 U.S. 19 (1960) ........................................................................................... 9

*Cooper v. Meridian Yachts, Ltd.*,
  575 F.3d 1151 (11th Cir. 2009) .....................................................................10

*Dong Su v. Henry Glob. Consulting Grp.*,
  2021 WL 2712366 (C.D. Cal. July 1, 2021).................................................16

*Dreyfuss v. W. Coast Life Ins. Co.*,
  2021 WL 254313 (S.D. Ga. Jan. 25, 2021) ................................................... 6

*Ellis v. Whirlpool Corp.*,
  2007 WL 4706908 (N.D. Ala. Nov. 27, 2007) ............................................11

*Fleming v. Charles Schwab Corp.*,
  878 F.3d 1146 (9th Cir. 2017) ................................................... 12, 13, 14, 15

*Glasgo v. Uber Techs., Inc.*,
  2019 WL 1998326 (M.D. Fla. May 3, 2019)................................................. 6

*Hammett v. Sherman*,
  2020 WL 1332591 (S.D. Cal. Mar. 23, 2020) ............................................17

*Hemispherx Biopharma, Inc. v. MidSouth Cap., Inc.*,
  669 F. Supp. 2d 1353 (S.D. Fla. 2009) ........................................................ 4

*Hill v. Nagpal*,
  2013 WL 246746 (S.D. Fla. Jan. 22, 2013).................................................17

*Holt v. Station Casinos, Inc.*,
  2012 WL 13005972 (S.D. Fla. Apr. 2, 2012) ............................................... 8

*In re Textainer P'ship Sec. Litig.*,
  2005 WL 3801596 (N.D. Cal. Dec. 12, 2005)..............................................17

*Ins. Co. of Pa. v. Centerline Homes, Inc.*,
  2011 WL 1595058 (S.D. Fla. Apr. 27, 2011) ............................................... 5

*Instituto De Prevision Militar v. Merrill Lynch*,
  546 F.3d 1340 (11th Cir. 2008) .................................................... 11, 12, 13

*Kelly v. Gerber Prods. Co.*,
2021 WL 2410158 (S.D. Fla. June 11, 2021) ........................................................ 7

*Kurz v. Fidelity Mgmt. & Research, Co.*,
556 F.3d 639 (7th Cir. 2009) ...................................................................................12

*Laguna Invs., LLC v. Deutsche Bank Trust Co. Americas*,
2006 WL 3366133 (Cal. Ct. App. Nov. 21, 2006) .................................................17

*Lawrence v. Bank of Am., N.A.*,
455 F. App'x 904 (11th Cir. 2012)..........................................................................16

*Lewis v. Scottrade, Inc.*,
879 F.3d 850 (8th Cir. 2018) ........................................................................... 14, 15

*Lianne Yao v. Ulta Beauty Inc.*,
2018 WL 4208324 (S.D. Fla. Aug. 8, 2018).............................................................5

*Manuel v. Convergys Corp.*,
430 F.3d 1132 (11th Cir. 2005) ............................................................................5, 8

*Maxon v. Sentry Life Ins. Co.*,
2018 WL 3850011 (M.D. Fla. Apr. 11, 2018).........................................................11

*McFall v. Stacy & Witbeck, Inc.*,
2016 WL 6248882 (N.D. Cal. Oct. 26, 2016) .........................................................18

*Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*,
547 U.S. 71 (2006) ..................................................................................................15

*Motorola Mobility, Inc. v. Microsoft Corp.*,
804 F. Supp. 2d 1271 (S.D. Fla. 2011) .....................................................................9

*Nat'l Tr. Ins. Co. v. Pa. Nat'l Mut. Cas. Ins. Co.*,
223 F. Supp. 3d 1236 (M.D. Fla. 2016) ....................................................................9

*Orseck, P.A. v. Servicios Legales de Mesoamerica S. de R.L.*,
699 F. Supp. 2d 1344 (S.D. Fla. 2010) ...................................................................10

*Peterson v. Aaron's, Inc.*,
2015 WL 224750 (N.D. Ga. Jan. 15, 2015) ...........................................................6, 7

*Rayner v. E*TRADE Fin. Corp.*,
899 F.3d 117 (2d Cir. 2018) ......................................................................... 12, 13, 14

*Rudolph & Me, Inc. v. Ornament Cent., LLC*,
2011 WL 3919711 (M.D. Fla. Sept. 7, 2011).........................................................6, 7

*S&B/Bibb Hines PB 3 Joint Venture v. Progress Energy Fla., Inc.,*
    365 F. App'x 202 (11th Cir. 2010) ................................................................16

*SCIGRIP, Inc. v. Engineered Bonding Sols., LLC,*
    2015 WL 13792807 (M.D. Fla. Dec. 9, 2015) ...........................................18

*Scoma Chiropractic, P.A. v. Dental Equities, LLC,*
    2016 WL 11410896 (M.D. Fla. Apr. 29, 2016) ..........................................11

*Segal v. Fifth Third Bank, N.A.,*
    581 F.3d 305 (6th Cir. 2009) ....................................................................14

*Spencer v. Wachovia Bank, N.A.,*
    2006 WL 3408043 (S.D. Fla. May 10, 2006) ......................................14, 15

*Spice Jazz LLC v. Youngevity Int'l, Inc.,*
    2020 WL 6484640 (S.D. Cal. Nov. 4, 2020) ..............................................18

*Strother v. Hylas Yachts, Inc.,*
    2012 WL 4531357 (S.D. Fla. Oct. 1, 2012) ..................................................7

*SunSouth Bank v. NashYork, LLC,*
    2013 WL 500348 (M.D. Ala. Feb. 11, 2013) ...............................................8

*Suomen Colorize Oy v. DISH Network L.L.C,*
    801 F. Supp. 2d 1334 (M.D. Fla. 2011) ......................................................8

*Uecker v. Wells Fargo Capital Fin. LLC (In re Mortg. Fund '08 LLC),*
    527 B.R. 351 (N.D. Cal. 2015) ..................................................................18

*Van Dusen v. Barrack,*
    376 U.S. 612 (1964) ....................................................................................8

*Women's Choice Pharms., LLC v. Rook Pharms., Inc.,*
    2016 WL 6600438 (S.D. Fla. Nov. 8, 2016) ...............................................6

*Zampa v. JUUL Labs, Inc.,*
    2019 WL 1777730 (S.D. Fla. Apr. 23, 2019) ..............................................7

*Zola v. TD Ameritrade, Inc.,*
    889 F.3d 920 (8th Cir. 2018) .........................................................12, 13, 14

*ZP No. 54 Ltd. P'ship v. Fid. & Deposit Co. of Md.,*
    917 So. 2d 368 (Fla. 5th DCA 2005) ...................................................16, 18

STATUTES

Pub. L. No. 105-353, 12 Stat. 3227 ......................................................................1

15 U.S.C. §§ 77r(b) ................................................................................................15

15 U.S.C. § 78bb ............................................................................................. 12, 15

15 U.S.C. § 78u-4 ................................................................................................. 3

28 U.S.C. § 1391 .................................................................................................. 4

28 U.S.C. § 1404 .......................................................................................... 1, 4, 8

**OTHER AUTHORITIES**

Fed. R. Civ. P. 45(c) ..........................................................................................10

Defendants Robinhood Financial LLC ("Robinhood"), Citadel Securities LLC, Apex Clearing Corporation, Two Sigma Securities, LLC,[1] Wolverine Securities, LLC, and Virtu Financial, Inc. (collectively, the purported "Market-Maker Defendants") (together with Robinhood, the "Defendants") submit this memorandum in support of their motion to transfer venue to the United States District Court for the Northern District of California pursuant to 28 U.S.C. § 1404 or, in the alternative, dismiss this action pursuant to the Securities Litigation Uniform Standards Act of 1998 ("SLUSA"), Pub. L. No. 105-353, 12 Stat. 3227, and for failure to state a claim.

## PRELIMINARY STATEMENT

Plaintiff Jim Antonio Alers filed suit in this District despite the fact that a consolidated putative class action based on substantially identical factual allegations has been pending against Robinhood in the Northern District of California for months (the "Consolidated Action"). Rather than join that ongoing action, Plaintiff sought to try his luck elsewhere by filing a copycat complaint in a different federal forum. Plaintiff's attempt to force Defendants to litigate the same issues in separate courthouses and be subjected to potentially inconsistent rulings elevates gamesmanship over efficiency and common sense. Under the well-established "first-filed" rule, the Court should transfer this case to the Northern District of California, where it would automatically be consolidated with the Consolidated Action.

Transfer of this action to the Northern District of California will serve the interests of justice and judicial economy, avoid duplicative and potentially inconsistent rulings, and reduce expenses for the courts and the parties. The Consolidated Action proposes a nationwide class, which subsumes Plaintiff's proposed Florida-only class. Moreover, the cases that were consolidated into the Consolidated Action were filed starting over a year ago and there have been significant developments since then—the actions have been consolidated, the court has appointed lead counsel and a lead plaintiff, a Consolidated Amended Complaint has been filed, and Robinhood has moved to dismiss and to deny class certification. The consolidation order in that case expressly contemplates that an action arising out of the same subject matter may be transferred to the Northern District of

---

[1]   Plaintiff incorrectly refers to this Defendant as "Two Signa Securities, LLC" and "Signa."

California and automatically will be consolidated with the Consolidated Action.  Transfer would allow this action to be consolidated with the Consolidated Action and proceed efficiently in a single forum.

In the alternative, the Court should dismiss this case because it is precluded by the Securities Litigation Uniform Standards Act of 1998 ("SLUSA"), which bars plaintiffs from bringing securities fraud class actions under the guise of state law.  Every Court of Appeals to have addressed this issue, as well as numerous district courts, has held that SLUSA bars class actions, such as this one, asserting state law claims premised on breaches of the "duty of best execution" involving fraud or nondisclosure.  The duty of best execution requires broker-dealers to seek the most favorable execution terms reasonably available under the circumstances.  Plaintiff's theory is that Robinhood allegedly deceived its customers into believing it would deliver best execution of their trades, but instead negotiated with the Market-Maker Defendants to receive excessive payment for order flow ("PFOF") rates— generally defined as compensation paid to broker-dealers for routing orders to principal trading firms for execution—which purportedly caused Robinhood customers to receive inferior trade execution prices compared to what the customers might have obtained from other retail broker-dealers.  Indeed, Plaintiff expressly admitted in his original complaint that the case is premised on alleged misrepresentations and omissions that Robinhood made in connection with its alleged breach of the duty of best execution.  Plaintiff now attempts to avoid the SLUSA bar by amending his complaint to remove words like "misrepresentation" and "omission," but those changes make no difference because the substance of Plaintiff's claims—which is all that matters under SLUSA—remains the same.  As recognized by federal courts addressing substantially similar allegations, Plaintiff's claims fall squarely within the scope of SLUSA and must be dismissed.

Although SLUSA bars each of Plaintiff's claims at the outset, Plaintiff has further failed to adequately plead two central elements of his aiding and abetting breach of fiduciary duty claims: actual knowledge and substantial assistance.  Each failure is a separate, additional reason to dismiss those particular claims.

<u>BACKGROUND</u>

 Starting in December 2020, five putative class actions were filed in either the Southern or Northern Districts of California asserting that Robinhood and certain affiliated Robinhood entities made material misrepresentations and omissions in connection with an alleged breach of the duty of best execution.[2]   In addition to asserting various state law claims, each of the actions filed in the Northern District asserted a violation of Section 10(b) of the Securities Exchange Act of 1934.  The assertion of that claim rendered the actions subject to the Private Securities Litigation Reform Act, triggering certain procedural requirements, including consolidation of the actions and the appointment of a lead plaintiff and lead counsel.  *See* 15 U.S.C. § 78u-4.

 After the action filed in the Southern District of California was transferred to the Northern District, all of the actions were consolidated in April 2021 under the name *In re Robinhood Order Flow Litigation*, and the court overseeing the Consolidated Action appointed a lead plaintiff and lead class counsel.  (Ex. 1.)[3]  The consolidation order expressly states that related actions that are transferred to the Northern District will be consolidated into the Consolidated Action.  (*Id.* at 5.)

 In May 2021, the lead plaintiff filed a Consolidated Amended Complaint ("CAC"). (Ex. 2.)  The CAC asserts claims under Section 10(b) of the Securities Exchange Act of 1934 and various state law claims, including breach of fiduciary duty (the same claim asserted in this action).  Robinhood moved to dismiss the CAC and to deny class certification in June 2021.  Those motions have been fully briefed.

 On August 31, 2021—almost a year after the first best execution case was filed against Robinhood in the Northern District of California—Plaintiff commenced this action. (*See* Dkt. No. 1.)  On October 25, Defendants filed a motion to transfer this case to the Northern District of California or dismiss the case under SLUSA and for failure to state a claim.  (*See* Dkt. No. 43.)  In light of the arguments made in that motion, Plaintiff sought

---

[2] One additional action was filed in the Southern District of New York, but it was subsequently dismissed.

[3] Citations to "Ex. __" refer to the exhibits to the accompanying Declaration of Brandon Fetzer.

leave to file an amended complaint, which Defendants did not oppose.  Plaintiff's motion was granted on December 14.  (*See* Dkt. Nos. 46, 49.)

Plaintiff's original complaint, the Amended Complaint, and the CAC share the same central theory: that Robinhood failed to disclose its revenue from PFOF and violated its duty of best execution.[4]  Plaintiff asserts that Robinhood breached its fiduciary duties and that the Market-Maker Defendants aided and abetted Robinhood's alleged breach.  (AC ¶¶ 68-173.)

## ARGUMENT

### I.    THE COURT SHOULD TRANSFER THIS CASE TO THE NORTHERN DISTRICT OF CALIFORNIA.

Given the existence of the Consolidated Action, which was commenced well before the filing of this case, the Court should not permit Plaintiff's blatant forum shopping.  It should transfer this action to the Northern District of California under the doctrine of comity and "in the interest of justice."  28 U.S.C. § 1404(a).

The Court may transfer this action to the Northern District of California, where the Consolidated Action is pending and where this action also "might have been brought" under 28 U.S.C. § 1404(a).  Venue is proper in the Northern District of California because a substantial part of the events allegedly giving rise to Plaintiff's claims occurred in that district and because Robinhood is subject to personal jurisdiction there.   28 U.S.C. § 1391(b).  "In enacting the venue statute, Congress intended to protect defendants and therefore meant to require courts to focus on relevant activities of the defendant, not of the plaintiff."  *Hemispherx Biopharma, Inc. v. MidSouth Cap., Inc.*, 669 F. Supp. 2d 1353, 1356 (S.D. Fla. 2009) (internal quotation omitted).   The gravamen of the Amended Complaint is that Robinhood, which is headquartered in Menlo Park, California, made misrepresentations and omissions in connection with an alleged breach of the duty of best execution.  (AC ¶¶ 2, 15, 18, 19, 60.)  The alleged breach and those misrepresentations and omissions emanated from California, not Florida.

---

[4]     In fact, many of Plaintiff's allegations are identical to the CAC.  (*Compare* CAC ¶¶ 22 25, 27-28, 30-35, 49-63, 76-80, 82 *with* AC ¶¶ 3, 22-23, 25-41, 43-46.)

A.   **This Court Should Exercise Its Discretion to Transfer the Action Pursuant to the First-Filed Rule.**

Under the first-filed rule and consistent with comity, the Court should transfer this action to the Northern District of California, where five related actions were consolidated before Plaintiff sued here. "The first-filed rule provides that when parties have instituted competing or parallel litigation in separate courts, the court initially seized of the controversy should hear the case." *Collegiate Licensing Co. v. Am. Cas. Co. of Reading, Pa.*, 713 F.3d 71, 78 (11th Cir. 2013); *see also Ins. Co. of Pa. v. Centerline Homes, Inc.*, 2011 WL 1595058, at *1 (S.D. Fla. Apr. 27, 2011) ("The first-filed rule is premised on judicial economy, comity amongst the district courts, and the desire to avoid potentially conflicting rulings."). "Where two actions involving overlapping issues and parties are pending in two federal courts, there is a ***strong presumption*** across the federal circuits that favors the forum of the first-filed suit under the first-filed rule." *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 (11th Cir. 2005) (emphasis added). Plaintiff, as "the party objecting to jurisdiction in the first-filed forum," bears the "burden of proving '***compelling circumstances***' to warrant an exception to the first-filed rule." *Id.* (emphasis added). No such circumstances exist here.

Courts consider three factors to determine the applicability of the first-filed rule: (1) the chronology of the actions; (2) the similarity of the parties; and (3) the similarity of the issues. *Lianne Yao v. Ulta Beauty Inc.*, 2018 WL 4208324, at *1 (S.D. Fla. Aug. 8, 2018). These factors all weigh in favor of the application of the first-filed rule in this case.

***First***, the original suit relating to Robinhood's alleged breach of the duty of best execution was commenced in December 2020 in the Northern District of California, and the CAC has been on file in that district since May 2021, easily satisfying the chronology requirement. *See id.* at *2 (applying first-filed rule where first action was filed three months prior).

***Second***, the similarity-of-parties requirement is met because both actions include Robinhood and a putative class of Robinhood customers who purportedly were injured by Robinhood's alleged misrepresentations and omissions in connection with the alleged

violation of the duty of best execution.[5]  *See Chapman v. Progressive Am. Ins. Co.*, 2017 WL 3124186, at *2 (N.D. Fla. July 24, 2017) (finding similarity-of-parties requirement satisfied because "there would be overlap between the classes"); *Arnesen v. Am. Home Shield of Fla., Inc.*, 2012 WL 13024104, at *2 (S.D. Fla. July 9, 2012) (applying first-filed rule where class definitions in the two cases were "substantially identical").  Although this action includes defendants that are not named in the Consolidated Action, "both actions were filed against a common defendant."  *Chapman*, 2017 WL 3124186, at *2; *see also Rudolph & Me, Inc. v. Ornament Cent., LLC*, 2011 WL 3919711, at *2 (M.D. Fla. Sept. 7, 2011) (granting motion to transfer despite "disparity between the parties" because "a precise identity of the parties is not required").  The first-filed rule applies so long as "some of the parties" in the later-filed action "are also in" the first-filed action.  *Dreyfuss v. W. Coast Life Ins. Co.*, 2021 WL 254313, at *1-2 (S.D. Ga. Jan. 25, 2021) (first-filed rule "does not demand complete unity of parties," as "mere overlap is enough") (internal quotation omitted); *see also Women's Choice Pharms., LLC v. Rook Pharms., Inc.*, 2016 WL 6600438, at *3 (S.D. Fla. Nov. 8, 2016) (finding "sufficient similarity between the parties" and transferring case despite "a patent disparity" in named defendants).

Plaintiff's attempt to avoid transfer and consolidation with the Consolidated Action by changing from a nationwide class to a Florida class should be rejected.  (*See* Redline, Dkt. No. 46, Ex. A ¶ 57.)  That change does not impact transfer of this action because Plaintiff's proposed statewide class is fully subsumed within the nationwide class proposed in the Consolidated Action.  *See Glasgo v. Uber Techs., Inc.*, 2019 WL 1998326, at *1 (M.D. Fla. May 3, 2019) (finding similarity of the parties weighs in favor of transfer where "the entire class [plaintiff] purports to represent . . . *is subsumed within the putative class*" of the pre-existing action) (emphasis added); *see also Peterson v. Aaron's, Inc.*, 2015 WL 224750, at *2-3 (N.D. Ga. Jan. 15, 2015) (noting that "courts routinely look to the similarities of the *proposed* classes even where the court has not yet ruled on the

---

[5]    *Compare* AC ¶ 57 ("All former and current Customers of Robinhood in Florida, United States who traded on Robinhood's platform within 4 years preceding the filing of this lawsuit.") *with* CAC ¶ 98 ("All persons in the United States or its Territories who were users of Robinhood between September 1, 2016 and June 16, 2020 and who placed orders in connection with which Defendants received payment for order flow.").

certification question" and granting motion to stay where one proposed class "is, by definition, a subset" of the other) (emphasis in original) (internal quotation omitted).

*Third*, the claims and issues raised in this case are substantially similar to those raised in the Consolidated Action.  Both actions assert claims against Robinhood for the same alleged breach of the duty of best execution.[6]  Indeed, many of Plaintiff's allegations are copied verbatim from the CAC.  (*Compare* CAC ¶¶ 22-25, 27-28, 30-35, 49-63, 76-80, 82 *with* AC ¶¶ 3, 22-23, 25-41, 43-46.)

Plaintiff's assertion of aiding and abetting claims against additional defendants that are not asserted in the Consolidated Action does not impact the analysis because there need only be "substantial overlap" between "the issues" raised, implicating common factual determinations, to warrant transfer.  *Zampa v. JUUL Labs, Inc.*, 2019 WL 1777730, at *5 (S.D. Fla. Apr. 23, 2019); *see also Kelly v. Gerber Prods. Co.*, 2021 WL 2410158, at *1 (S.D. Fla. June 11, 2021) ("Raising new claims in the second action does not defeat the first-to-file rule.  Differences between issues 'have no bearing so long as their resolutions turn on similar determinations of fact.'") (citation omitted); *Peterson*, 2015 WL 224750, at *3 ("As long as the underlying facts are the same . . . the fact that the two complaints allege violations of different . . . laws is not enough to render them substantially dissimilar for purposes of the first-to-file analysis.") (citation omitted); *Strother v. Hylas Yachts, Inc.*, 2012 WL 4531357, at *2 (S.D. Fla. Oct. 1, 2012) ("[A]ll that need be present is that the two actions involve closely related questions or common subject matter.") (internal quotation omitted); *Rudolph & Me*, 2011 WL 3919711, at *3 (first-filed rule applicable "where the subject matter of the later filed case substantially overlaps with that of the earlier one").  Plaintiff's aiding and abetting claims turn on the same facts as those alleged in the Consolidated Action because Plaintiff must first establish that Robinhood breached a duty before he can attempt to recover from the Market-Maker Defendants.

There is no conceivable reason for Plaintiff's decision to file his lawsuit in this District other than to gain some perceived tactical advantage by forcing Robinhood to

---

[6]    In connection with Robinhood's motion to dismiss the Consolidated Action, the lead plaintiff in the Consolidated Action did not dispute that SLUSA requires actions like this one to be filed under the federal securities laws, and therefore did not oppose dismissal of his state law claims.

litigate on two fronts.  The Court should reject Plaintiff's gamesmanship.

    **B.**    **The Balance of Factors That Courts Consider in Determining Whether Transfer is Appropriate Weighs in Favor of Transfer.**

In addition to the first-filed rule, the balance of factors under 28 U.S.C. § 1404 weighs strongly in favor of transfer.  "Two courts considering the same issue not only is a waste of judicial resources, but also gives rise to the possibility of conflicting results."  *Holt v. Station Casinos, Inc.*, 2012 WL 13005972, at *2 (S.D. Fla. Apr. 2, 2012).  The purpose of 28 U.S.C. § 1404(a) is "to prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Suomen Colorize Oy v. DISH Network L.L.C.*, 801 F. Supp. 2d 1334, 1337 (M.D. Fla. 2011) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964)).

The Eleventh Circuit has identified nine factors courts should consider in evaluating whether transfer is appropriate:  (1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.  *See Manuel*, 430 F.3d at 1135 n.1.  Here, the balance of these factors weighs in favor of transfer.

    **1.**    **Judicial Economy and the Interests of Justice Favor Transfer.**

Transfer of this action to the Northern District of California would best serve the interests of judicial economy and the efficient administration of justice because this action would be automatically consolidated with the Consolidated Action.  *See Cent. Money Mortg. Co. v. Holman*, 122 F. Supp. 2d 1345, 1347 (M.D. Fla. 2000) (transfer and consolidation of cases involving the same central issue and duplicative evidence and witnesses "would promote judicial economy and efficiency, and avoid problems related to duplicative actions in multiple forums").

Because this action asserts claims based on the same underlying facts—Robinhood's alleged breach of the duty of best execution—transfer of this action to the Northern District of California would serve Section 1404(a)'s important purpose of preventing duplicative and potentially inconsistent rulings, as well as reducing expenses for the court, the parties, and

potential witnesses.  *See SunSouth Bank v. NashYork, LLC*, 2013 WL 500348, at *3 (M.D. Ala. Feb. 11, 2013) ("The interests of justice require that the cases be *related*, not identical.") (internal quotation omitted) (emphasis added).  As the Supreme Court has emphasized, "[t]o permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent."  *Cont'l Grain Co. v. FBL-585*, 364 U.S. 19, 26 (1960).  The interests of judicial efficiency are served when related cases can be consolidated in a single court.  *See Brown v. Conn. Gen. Life Ins. Co.*, 934 F.2d 1193, 1197 (11th Cir. 1991) (affirming transfer and stating it was "important that both these cases proceed in a single district to permit consolidation").

## 2. The Underlying Events Occurred in California, and Witnesses and Evidence are Located There.

That the five earlier-filed actions were commenced in California is no accident:  this lawsuit is based on events that occurred in that state.  The "site of the events from which the claim arises" is a "key factor" in evaluating a motion to transfer venue.  *Nat'l Tr. Ins. Co. v. Pa. Nat'l Mut. Cas. Ins. Co.*, 223 F. Supp. 3d 1236, 1245 (M.D. Fla. 2016) (citation omitted).  Plaintiff does not allege any conduct by Robinhood related to its duty of best execution that occurred outside of Robinhood's headquarters in Menlo Park, California; nor does Plaintiff identify any pertinent events occurring in Florida.  None of the Market-Maker Defendants have their principal places of business in Florida.

The convenience of witnesses—many of whom are located at Robinhood's headquarters in California—"is probably considered the single most important factor in the analysis whether a transfer should be granted."  *Bray v. Bank of Am.*, 2014 WL 12622468, at *2 (M.D. Fla. July 29, 2014) (internal quotation omitted); *see also Am. Aircraft Sales Int'l, Inc. v. Airwarsaw, Inc.*, 55 F. Supp. 2d 1347, 1352 (M.D. Fla. 1999) (giving "great weight" to the convenience of parties and witnesses); *Motorola Mobility, Inc. v. Microsoft Corp.*, 804 F. Supp. 2d 1271, 1277 (S.D. Fla. 2011) (granting motion to transfer because defendant and "the majority of the witnesses" were located in the other state).  Were these claims not SLUSA-barred for the reasons explained below, those witnesses would be subject to depositions and trial in California in connection with the Consolidated Action on the

same subject matter as this lawsuit, and they would suffer substantial inconvenience if duplicative litigation were to proceed in this District as well.

To the extent there are non-party witnesses with relevant knowledge, such as former Robinhood employees, those witnesses are likely to be located in California, and the convenience of such non-party witnesses favors transfer.  Consequently, the Northern District of California is more likely than this District to be able to compel their live testimony.  *See* Fed. R. Civ. P. 45(c) (limiting the geographic area in which a person may be ordered to attend a trial, hearing, or deposition).

For the same reasons, documents and other sources of proof are located in California.  Although the electronic transfer of documents reduces the importance of this factor, it "still weighs slightly in favor of transfer."  *Camoco, LLC v. Leyva*, 2018 WL 6166302, at *5 (M.D. Fla. Sept. 21, 2018) (internal quotation omitted); *see also Brandywine Commc'ns Techs., LLC v. AT&T Corp.*, 2012 WL 1658810, at *7 (M.D. Fla. Apr. 25, 2012) (granting transfer to Northern District of California where one of two defendants resided in California and the majority of evidence would originate from California, notwithstanding the presence in Florida of certain witnesses), *report and recommendation adopted*, 2012 WL 1658533 (M.D. Fla. May 11, 2012).

### 3.    Familiarity with the Governing Law Favors Transfer.

California courts' familiarity with the governing law weighs in favor of transfer. When customers sign up for Robinhood accounts, they agree to abide by the terms of a customer agreement, which includes a broadly written choice-of-law provision dictating that California law governs all claims relating to the agreement and any transactions in their accounts.  (*See* Ex. 3 § 36.K.)  Plaintiff's claims relate to trading within his Robinhood account and are therefore governed by California law.  *See Cooper v. Meridian Yachts, Ltd.*, 575 F.3d 1151, 1162 (11th Cir. 2009) (instructing courts to examine the scope of the choice-of-law provision and holding that a broadly written provision applies to tort claims). As other courts have found, this factor supports transfer to a jurisdiction that has more familiarity applying another state's law.  *See, e.g., Orseck, P.A. v. Servicios Legales de Mesoamerica S. de R.L.*, 699 F. Supp. 2d 1344, 1353–54 (S.D. Fla. 2010) (granting motion to transfer action to another jurisdiction, given its greater familiarity with the governing law).

10

4.   Plaintiff's Choice of Forum and the Relative Means of the Parties Are Neutral Factors.

The remaining factors are neutral.  Plaintiff's chosen forum in this case is afforded little, if any, deference because the case is asserted on behalf of a putative class and "the operative facts underlying the action occurred outside of the judicial district where the action was brought." *Scoma Chiropractic, P.A. v. Dental Equities, LLC*, 2016 WL 11410896, at *2 (M.D. Fla. Apr. 29, 2016); *Ellis v. Whirlpool Corp.*, 2007 WL 4706908, at *1 (N.D. Ala. Nov. 27, 2007) (A "plaintiff's choice of forum . . . is not a significant factor when the case is prosecuted as a class action."); *see also Clinton v. Sec. Benefit Life Ins. Co.*, 2020 WL 6120565, at *8 (S.D. Fla. June 29, 2020), *report and recommendation adopted*, 2020 WL 6120554 (S.D. Fla. July 21, 2020) ("[W]hen the conduct at issue did not occur in plaintiff's chosen forum, courts also give less deference to a plaintiff's desired forum."); *BES Design Build, LLC v. Harrell Design Grp., P.C.*, 2018 WL 6739069, at *6 (S.D. Ala. Oct. 26, 2018) (Where "the bulk of events which give rise to this action took place" in a different state, plaintiff's choice of forum "is subject to diminished deference."); *Carucel Invs., L.P. v. Novatel Wireless, Inc.*, 157 F. Supp. 3d 1219, 1225-26 (S.D. Fla. 2016) (transferring case to California because central defendant maintained "its headquarters and the majority of its relevant personnel" there and none of the remaining defendants were "incorporated in Florida" or had "their principal place of business in Florida").

In the class action context, the "relative means" of the parties also is "essentially irrelevant" because "counsel are financing the case on behalf of Plaintiffs, whose modest means relative to those of Defendant are of absolutely no moment." *Maxon v. Sentry Life Ins. Co.*, 2018 WL 3850011, at *4 (M.D. Fla. Apr. 11, 2018) (internal quotation omitted).

## II.   ALTERNATIVELY, THE COURT SHOULD DISMISS PLAINTIFF'S SLUSA-BARRED COMPLAINT.

Plaintiff's Amended Complaint, which asserts only state-law claims, is precluded by SLUSA.  Under long-established Eleventh Circuit precedent, SLUSA bars a class action if it meets five elements: (1) a "covered class action" (2) based on state law claims (3) alleging that the defendants made a misrepresentation or omission or employed any manipulative or deceptive device (4) in connection with the purchase or sale of (5) a "covered security."  *See*

*Instituto De Prevision Militar v. Merrill Lynch*, 546 F.3d 1340, 1345 (11th Cir. 2008). This action easily meets these elements, and the Court should dismiss it with prejudice.

Every Court of Appeals to have addressed the issue has determined that alleged breaches of the duty of best execution involving fraud or nondisclosure are subject to the SLUSA bar.  *See Fleming v. Charles Schwab Corp.*, 878 F.3d 1146, 1154 (9th Cir. 2017) (holding, based on the court's review of the "gravamen" or "substance" of the alleged conduct, that SLUSA "bars best execution claims to the extent that a best execution violation is based on fraud or nondisclosure") (internal quotation omitted); *Rayner v. E*TRADE Fin. Corp.*, 899 F.3d 117, 121 (2d Cir. 2018) (holding that "best execution claims alleging misrepresentations or omissions" relating to a broker's receipt of PFOF are subject to SLUSA preclusion); *Zola v. TD Ameritrade, Inc.*, 889 F.3d 920, 923-26 (8th Cir. 2018) (affirming dismissal of best execution fiduciary duty claims, as well as aiding and abetting claims, as precluded by SLUSA); *Kurz v. Fidelity Mgmt. & Research Co.*, 556 F.3d 639, 641-42 (7th Cir. 2009) (rejecting plaintiff's argument that SLUSA did not permit removal of suit filed in state court alleging violation of duty of best execution as "frivolous" and concluding that plaintiff "had a federal securities claim, or he had nothing").

A.     **This Case Is a Covered Class Action under SLUSA.**

This case is a "covered class action."  *See Instituto De Prevision Militar*, 546 F.3d at 1345.  Under 15 U.S.C. § 78bb(f)(5)(B), an action is a covered class action if it meets one of two different definitions.  Plaintiff's lawsuit meets both.  This lawsuit satisfies the first definition because damages are sought on behalf of more than 50 persons or prospective class members and Plaintiff alleges that questions of law or fact common to those persons or members of the prospective class predominate over any questions affecting only individual persons or members.  *See* 15 U.S.C. § 78bb(f)(5)(B)(i)(I).  (AC ¶¶ 60, 63.)  This action also satisfies a separate, second definition of a covered class action: Plaintiff seeks to recover damages on a representative basis on behalf of himself and other unnamed parties similarly situated, and Plaintiff alleges that questions of law or fact common to those persons or members of the prospective class predominate over any questions affecting only individual persons or members.  *See* 15 U.S.C. § 78bb(f)(5)(B)(i)(II).  (AC ¶¶ 60, 63 (alleging that there are potentially "thousands of Class Members" and that "common questions predominate

over any questions affecting only individual Class Members").)  By either definition, this lawsuit is a covered class action.

> **B.      Plaintiff Asserts Claims Based on State Common Law.**

Plaintiff's claims are based on state common law.  *See Instituto De Prevision Militar*, 546 F.3d at 1345.  Specifically, Plaintiff alleges breach of fiduciary duty and aiding and abetting breach of fiduciary duty claims.  (AC ¶¶ 68-173.)

> **C.      Plaintiff's Claims Are Based on Alleged Misrepresentations or Omissions, or an Alleged "Manipulative or Deceptive Device."**

Plaintiff's claims are based on alleged misrepresentations or omissions, or an alleged "manipulative or deceptive device."  *See Instituto De Prevision Militar*, 546 F.3d at 1345. Plaintiff's claim that Robinhood breached its duty of best execution by routing orders only to execution venues that "would agree to pay it high fees" is, in essence, based on the theory that Robinhood allegedly deceived its customers regarding the execution of their trade orders.  (AC ¶ 72.)  In his original complaint, Plaintiff expressly admitted that his claims were based on alleged misrepresentations and omissions: "***This action concerns the material misrepresentations and omissions*** made by Robinhood relating to its customers regarding its revenue sources . . . and relating to ***certain false statements*** about the execution quality Robinhood achieved for its customers' orders."  (Compl. ¶ 15 (emphasis added).)  Plaintiff cannot avoid SLUSA preclusion merely by amending his complaint to delete that admission and other explicit references to alleged misrepresentations or omissions, while maintaining the essence of his factual allegations.

Courts addressing substantially identical best execution claims have consistently refused to elevate form over substance and have held that, regardless of how they are framed, such claims are rooted in misrepresentation or omission, or a "manipulative or deceptive device," and are therefore precluded by SLUSA.  *See, e.g.*, *Fleming*, 878 F.3d at 1154 (holding that despite plaintiffs' careful attempt to avoid alleging fraud, "the substance of all their allegations is that Schwab, motivated by a conflict of interest, deceived Plaintiffs into believing it would deliver best execution of their trades but knew that sending all trades to [one designated venue] would breach that duty"); *Zola*, 889 F.3d at 924 (holding that, although plaintiffs "carefully avoided allegations that explicitly sounded in fraud (words like misrepresentation, omission, or deception are absent from their complaints)," their claims

"nonetheless are grounded in TD Ameritrade's failure to disclose the fact that it was selling its order flow to the highest bidders"—*i.e.*, venues willing to pay the largest PFOF); *Rayner*, 899 F.3d at 121 (holding that claim that E*TRADE "violated its best execution duty by placing its own interests first and routing clients' trades to the trading venues that paid the highest 'kickbacks'" was grounded in allegations of a "manipulative or deceptive device" and an "omission of a material fact").

The Court should reject Plaintiff's attempt to evade the SLUSA bar through artful pleading. Although Plaintiff seeks to walk away from his prior admission that "[t]his action concerns . . . material misrepresentations and omissions" and removes explicit references to "misrepresentations" and "omissions," such artful pleading is "insufficient to overcome the application of SLUSA: when the gravamen or essence of the complaint involves an untrue statement or substantive omission of a material fact, and when that conduct coincides with a transaction involving a covered security, SLUSA mandates dismissal." *Spencer v. Wachovia Bank, N.A.*, 2006 WL 3408043, at *2 (S.D. Fla. May 10, 2006) (internal quotation omitted); *see also Segal v. Fifth Third Bank, N.A.*, 581 F.3d 305, 311 (6th Cir. 2009) (rejecting plaintiffs' attempt to avoid SLUSA "through artful pleading that removes the covered words from the complaint but leaves in the covered concepts"); *Fleming*, 878 F.3d at 1154 (SLUSA applies when "[t]he gravamen of each of Plaintiffs' complaints, no matter how legally characterized, is that defendants intentionally breached a duty of 'best execution'"); *Rayner*, 899 F.3d at 120 (rejecting plaintiffs' attempt to "escape SLUSA by artfully characterizing a [breach of fiduciary duty] claim as dependent on a theory other than falsity when falsity nonetheless is essential to the claim") (internal quotation omitted); *Zola*, 889 F.3d at 924 (affirming district court's dismissal of complaint under SLUSA and observing "[w]hat matters is the conduct alleged, not the words used to describe the conduct") (internal quotation omitted); *Lewis v. Scottrade, Inc.*, 879 F.3d 850, 854 (8th Cir. 2018) (SLUSA preclusion can apply "[e]ven if [a plaintiff] did not allege a false misrepresentation or omission").

Despite the superficial changes to the complaint, the essence of Plaintiff's claims remains the same—*i.e.*, that Robinhood allegedly deceived its customers by advertising "commission free" trading while failing to disclose that customers purportedly "received inferior execution prices" in violation of Robinhood's duty of best execution.  (AC ¶ 18; *see*

*generally* AC ¶¶ 14-21.)   Even after his amendments, Plaintiff continues to allege that "Robinhood's customers were not advised that its purported 'commission free' trading came with a hefty price," Robinhood made a "claim" on its website about its "execution quality matching or beating its competitors," and Robinhood "failed to disclose" that PFOF was its "primary" or "most substantial" source of revenue.  (AC ¶¶ 14, 18-19, 60.)  The "substance" of these allegations—that Robinhood "deceived [customers] into believing it would deliver best execution of their trades" and breached that duty of best execution—pertains to "deceptive conduct" under the federal securities laws.  *Fleming*, 878 F.3d at 1154; *see Lewis*, 879 F.3d at 854 (SLUSA preclusion applied where the "core" of the "complaint is that [defendant] did not disclose its practice of not obtaining best execution").

Nor does it matter that Plaintiff's breach of fiduciary duty claim does not specifically include fraud as an element.  Courts have repeatedly rejected that such an element is required for the SLUSA bar to apply.  *See Fleming*, 878 F.3d at 1150, 1156 (holding California Unfair Competition Law, breach of fiduciary duty, and unjust enrichment claims premised on breach of duty of best execution were precluded by SLUSA); *Spencer*, 2006 WL 3408043, at *3 (plaintiffs cannot take facts relating to fraud in connection with the purchase and sale of securities and "cast them as claims for breach of fiduciary duty in an attempt to avoid SLUSA").

**D.   The Alleged Misconduct Was "in Connection with" the Purchase or Sale of "Covered Securities."**

The "in connection with" and "covered security" elements of SLUSA also are satisfied.  Plaintiff alleges that the deceptive conduct occurred in connection with the purchase or sale of securities that are traded on national exchanges.  (AC ¶¶ 18-19, 22.)  The Supreme Court has held that the phrase "in connection with" should be read broadly to include an alleged fraud that "coincide[s]" with a securities transaction, *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 83-85 (2006), and courts have consistently held that alleged violations of the duty of best execution satisfy this requirement.  *See Fleming*, 878 F.3d at 1155-56 (holding "in connection with" requirement satisfied) (citing cases).  Plaintiff's claims are expressly based on securities traded on "national exchanges," which qualify as covered securities.  *See Dabit*, 547 U.S. at 83 ("A

'covered security' is one traded nationally and listed on a regulated national exchange."); 15 U.S.C. §§ 77r(b), 78bb(f)(5)(E).

III.   **PLAINTIFF ALSO FAILS TO STATE AN AIDING AND ABETTING CLAIM.**

Separately, this Court should also dismiss the claims against the Market-Maker Defendants because Plaintiff—after two tries—fails to plausibly allege that any of the Market-Maker Defendants aided and abetted Robinhood's alleged breach of fiduciary duty. Indeed, notwithstanding his amendment to the complaint, Plaintiff still fails to adequately plead either of the central elements of an aiding and abetting claim: that any defendant had "actual knowledge" of the alleged breach or provided "substantial assistance" or encouragement to Robinhood.  The claims should therefore be dismissed.  *See, e.g., Lawrence v. Bank of Am., N.A.*, 455 F. App'x 904, 906-07 (11th Cir. 2012).

To survive a motion to dismiss, Plaintiff must plausibly allege that the Market-Maker Defendants (1) actually knew of Robinhood's breach of fiduciary duty and (2) substantially assisted or encouraged Robinhood's wrongdoing.  *See S&B/Bibb Hines PB 3 Joint Venture v. Progress Energy Fla., Inc.*, 365 F. App'x 202, 207 (11th Cir. 2010); *Dong Su v. Henry Glob. Consulting Grp.*, 2021 WL 2712366, at *2-3 (C.D. Cal. July 1, 2021); *see also ZP No. 54 Ltd. P'ship v. Fid. & Deposit Co. of Md.*, 917 So. 2d 368, 372-74 (Fla. 5th DCA 2005); *Casey v. U.S. Bank Nat. Ass'n.*, 127 Cal. App. 4th 1138, 1144 (2005).[7]  But Plaintiff's allegations—identical with respect to each of the five Market-Maker Defendants—are wholly conclusory and do not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

As to the element of actual knowledge, Plaintiff asserts in a conclusory fashion that each Market-Maker Defendant somehow "knew" (1) "that the arrangements between themselves and [Robinhood] violated [Robinhood's] fiduciary duty by placing [Robinhood's] financial interests over that of its customers," (2) "[t]he typical split that brokers receive from market-makers" and (3) "that by agreeing to what Robinhood was proposing, it would play a critical role in enabling Robinhood to carry out the agreement."

---

[7]   As explained above, California law governs Plaintiff's claims, but the Court need not decide this issue because Plaintiff fails to state a claim under both California and Florida law.

(*See* AC ¶¶ 88, 111, 128, 149, 168.)  As an initial matter, Plaintiff's allegations do not even touch on the central issue to an aiding and abetting claim—namely, the Market-Maker Defendant's actual knowledge that Robinhood was *not providing best execution to its trading customers* or making misrepresentations or omissions regarding the same, as opposed to merely entering into agreements with the Market-Maker Defendants that were favorable to Robinhood's business.  Plaintiff's aiding and abetting claims must be dismissed on this basis alone.  *See, e.g.*, *Hill v. Nagpal*, 2013 WL 246746, at *3 (S.D. Fla. Jan. 22, 2013) (dismissing an aiding and abetting breach of fiduciary duty claim where allegations failed to allege that defendants "knew that the act for which they were providing substantial assistance was the breach of a fiduciary duty").

Moreover, as with his initial pleading, Plaintiff continues to assert only bare "legal conclusion[s]" of actual knowledge and not "[f]actual allegations" sufficient to "raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555, 570.  Plaintiff does not point to any facts supporting his conclusory assertion of knowledge, such as how or when the Market-Maker Defendants obtained such knowledge.  The claims should be dismissed on this basis as well.  Significantly, courts in this district and elsewhere repeatedly and consistently have dismissed aiding and abetting breach of fiduciary duty claims for this exact pleading failure.  *See Hill*, 2013 WL 246746, at *3 (conclusory allegation that defendants "knowingly . . . aided and abetted the breaches of fiduciary duties described herein" not sufficient); *Hammett* v. *Sherman*, 2020 WL 1332591, at *9 (S.D. Cal. Mar. 23, 2020) (assertions that defendant "was aware of the misappropriation" constituting alleged breach based on industry knowledge and experience are not sufficient); *In re Textainer P'ship Sec. Litig.*, 2005 WL 3801596, at *16 (N.D. Cal. Dec. 12, 2005) (allegations that defendant executed an asset purchase agreement and other contracts, without more, were "conclusory in nature and, as such, . . . insufficient to plead" actual knowledge); *Laguna Invs., LLC* v. *Deutsche Bank Tr. Co. Ams.*, 2006 WL 3366133, at *12 (Cal. Ct. App. Nov. 21, 2006) (conclusory allegation that defendant "actively participated in, were [sic] aware of, and encouraged" the breach of fiduciary duty not sufficient).

Plaintiff's allegations with respect to substantial assistance fare no better.  Plaintiff asserts that each of the Market-Maker Defendants "consummated" certain agreements with Robinhood whereby the Market-Maker Defendants "would pay Robinhood a high price for

Robinhood's order flow" and repeats his prior allegations in the Amended Complaint regarding the substance of those agreements.  (*See* AC ¶¶ 79, 91, 97, 112, 118, 131, 137, 150, 156, 169.)  But "[s]ubstantial assistance is an essential element of an aiding and abetting claim." *SCIGRIP, Inc. v. Engineered Bonding Sols., LLC*, 2015 WL 13792807, at *6 n.3 (M.D. Fla. Dec. 9, 2015).  It is satisfied only when a defendant "affirmatively assists, helps conceal or fails to act when required to do so, thereby enabling the breach to occur." *Chang v. JPMorgan Chase Bank*, N.A., 845 F.3d 1087, 1098 (11th Cir. 2017); *see also Uecker v. Wells Fargo Capital Fin. LLC (In re Mortg. Fund '08 LLC)*, 527 B.R. 351, 365 (N.D. Cal. 2015) (observing that California courts have long held substantial assistance requires knowledge of a "specific primary wrong").  Plaintiff fails to allege how each Market-Maker Defendant "affirmatively assist[ed]" or "help[ed] conceal" Robinhood's alleged breach—failing to "execute customer orders on the most favorable terms reasonably available in the market under the circumstances" and making misrepresentations or omissions regarding the same —such that they "enabl[ed] the breach to occur."  While Plaintiff asserts that the Market-Maker Defendants' entry into certain agreements with Robinhood suffices, Plaintiff acknowledges in the Amended Complaint that each Market-Maker Defendant did not "enable" Robinhood's breach because it still would have occurred absent *"other market makers"* refusing to reach agreements with Robinhood.  *See, e.g., Spice Jazz LLC v. Youngevity Int'l, Inc.*, 2020 WL 6484640, at *6 (S.D. Cal. Nov. 4, 2020) (finding that substantial assistance was not pled where the "same harm" would have been sustained if other individuals were acting in place of the alleged aider-and-abettors).

At bottom, Plaintiff asserts in a vague fashion that the Market-Maker Defendants entered into agreements with Robinhood.  But merely doing business with an entity that allegedly breached its fiduciary duties does not render a party an aider and abettor.  *See, e.g., ZP No. 54 Ltd. P'ship*, 917 So. 2d at 372 (issuing bonds, without more, does not constitute the requisite "substantial assistance" under Florida law); *Banco Indus. de Venezuela, C.A. v. CDW Direct, L.L.C.*, 888 F. Supp. 2d 508, 516 (S.D.N.Y. 2012) (noting that plaintiff "offer[ed] no allegations that [defendant] was doing anything other than offering its normal services" and that "[t]he mere fact that the [primary wrongdoer] used [defendant] to perpetrate his breach of fiduciary duty does not rise to the level of substantial assistance"); *Uecker*, 527 B.R. at 365 (ordinary business transactions—releasing a lien on a

loan—did not constitute substantial assistance where plaintiff did not allege aider and abettor bank acted knowing it was assisting specific tort); *McFall v. Stacy & Witbeck, Inc.*, 2016 WL 6248882, at *5 (N.D. Cal. Oct. 26, 2016) (ordinary business transactions do not constitute "substantial assistance" without actual knowledge that actions are furthering breach of fiduciary duty).

For the foregoing reasons, the Court should dismiss with prejudice the aiding and abetting fiduciary duty claims against the Market-Maker Defendants.

## CONCLUSION

For the reasons set forth above, Defendants respectfully request that this action be transferred to the Northern District of California or, in the alternative, dismissed with prejudice.

Dated:  January 7, 2022                         Respectfully submitted,

By: */s/ Ryan T. Thornton*
Grace L. Mead (Florida Bar No. 49896)
Ryan T. Thornton (Florida Bar No. 99195)
**STEARNS WEAVER MILLER**
Museum Tower
150 West Flagler Street, Suite 2200
Miami, Florida 33130
Telephone: (305) 789-3559
Email: gmead@stearnsweaver.com
Email: rthornton@stearnsweaver.com

Maeve O'Connor (*pro hac vice*)
Elliot Greenfield (*pro hac vice*)
Brandon Fetzer (*pro hac vice*)
**DEBEVOISE & PLIMPTON LLP**
919 Third Avenue
New York, New York 10022
Telephone: (212) 909-6000
Email: mloconnor@debevoise.com
Email: egreenfield@debevoise.com
Email: bfetzer@debevoise.com

*Counsel for Defendant Robinhood Financial LLC*

By: */s/ Ian Ross*
Ian Ross (Florida Bar No. 91214)

19

**STUMPHAUZER FOSLID SLOMAN ROSS &
KOLAYA, PLLC**
One Biscayne Tower
Two S. Biscayne Boulevard, Suite 1600
Miami, Florida 33131
Telephone: (305) 614-1400
Email: iross@sfslaw.com

Andrew Gordon (*pro hac vice*)
Jessica Carey (*pro hac vice*)
Kristina Bunting (*pro hac vice*)
**PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP**
1285 Avenue of the Americas
New York, New York 10019
Telephone: (212) 373-3000
Email: agordon@paulweiss.com
Email: jcarey@paulweiss.com
Email: kbunting@paulweiss.com

*Counsel for Defendant Virtu Financial Inc.*

By: */s/ Angela D. Daker*
Angela D. Daker (Florida Bar No. 681571)
**WHITE & CASE LLP**
200 South Biscayne Blvd., Suite 4900
Miami, Florida 33131
Telephone: (305) 371-2700
Email: adaker@whitecase.com

J. Mark Gidley (*pro hac vice*)
**WHITE & CASE LLP**
701 Thirteenth Street, N.W.
Washington, D.C. 20005
Telephone: (202) 626-3600
Email: mgidley@whitecase.com

Jack E. Pace III (*pro hac vice*)
Bryan D. Gant (*pro hac vice*)
**WHITE & CASE LLP**
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 819-8200
Email: jpace@whitecase.com
Email: bgant@whitecase.com

*Counsel for Apex Clearing Corporation*

By: /s/ Louise McAlpin
Louise McAlpin (Florida Bar No. 983810)
Allison Kernisky (Florida Bar No. 41160)
**HOLLAND & KNIGHT LLP**
701 Brickell Avenue, Suite 3300
Miami, Florida 33131
Telephone: (305) 374-8500
Email: louise.mcalpin@hklaw.com
Email: allison.kernisky@hklaw.com

Roger A. Cooper (*pro hac vice*)
Jared Gerber (*pro hac vice*)
Miranda Gonzalez (*pro hac vice*)
**CLEARY GOTTLIEB STEEN & HAMILTON LLP**
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Email: racooper@cgsh.com
Email: jgerber@cgsh.com
Email: mirgonzalez@cgsh.com

*Counsel for Defendant Two Sigma Securities, LLC*

/s/ John F. O'Sullivan
John F. O'Sullivan (Florida Bar No. 143154)
**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
2601 South Bayshore Drive, Suite 1550
Miami, Florida 33133
Telephone: (305) 439-5008
johnosullivan@quinnemanuel.com

*Counsel for Defendant Citadel Securities LLC*

/s/ James D. Gassenheimer
James D. Gassenheimer (Florida Bar No. 959987)
**BERGER SINGERMAN LLP**
1450 Brickell Avenue, Suite 1900
Miami, Florida 33131
Telephone: (305) 755-9500

21

Facsimile: (305) 714-4340
Email: jgassenheimer@bergersingerman.com

Matthew J. Dolan (*pro hac vice*)
**SIDLEY AUSTIN LLP**
1001 Page Mill Road Building 1
Palo Alto, California 94304
Telephone: (650) 565-7106
mdolan@sidley.com

*Counsel for Defendant Wolverine Securities, LLC*

<u>CERTIFICATE OF GOOD FAITH CONFERENCE</u>

Pursuant to Local Rule 7.1(a)(3), I CERTIFY that on October 20, 2021, counsel for Defendants requested a telephonic conference with Plaintiff's counsel in a good faith effort to resolve the issues raised in this motion, as they pertained to Plaintiff's original complaint operative as of that date, that require conferral, specifically, transfer of this action to the Northern District of California.  Upon being informed that Defendants would seek transfer of this action, Plaintiff's counsel advised that Plaintiff opposes the relief.  After Plaintiff filed the Amended Complaint, counsel for Defendants on January 5, 2022 again requested Plaintiff's position on transfer of this action to the Northern District of California. Plaintiff's counsel reiterated its opposition to transfer of this action.

By:_____*/s/ Ryan T. Thornton*_____
Ryan T. Thornton

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on January 7, 2022, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached service list in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive Notices of Electronic Filing.

By: */s/ Ryan T. Thornton*

Ryan T. Thornton

## SERVICE LIST

Michael A. Citron, Esq.
Florida Bar No.: 105083
Kristen D. Montgomery, Esq.
Florida Bar No.: 1003495
MAC LEGAL, P.A.
4601 Sheridan Street, Ste. 205
Hollywood, Florida 33021
Telephone: (954) 395-2954
Michael@maclegalpa.com – Correspondence
KMontgomery@maclegalpa.com
Service@maclegalpa.com – Service Address

Igor Hernandez, Esq.
Florida Bar No. 106386
CORNISH HERNANDEZ GONZALEZ, PLLC
2525 Ponce de Leon Blvd, Suite 300
Coral Gables, Florida 33134
Telephone:  (305) 780-6058
service@CHGLawyers.com
ihernandez@chglawyers.com

Ely R. Levy, Esq.
Florida Bar No.: 15452
Venessa Valdes Solis, Esq.
Florida Bar No. 77122
LEVY & PARTNERS, PLLC
3230 Stirling Road, Suite 1
Hollywood, Florida 33021
Telephone: (954) 727-8570
elevy@lawlp.com – Service Address
venessa@lawlp.com – Service Address
Maritza@lawlp.com – Service Address