UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 0:21-cv-61848-COOKE/HUNT

JIM ANTONIO ALERS, on his own behalf, and on behalf of those similarly situated,

    Plaintiff(s),

v.

ROBINHOOD FINANCIAL, LLC, CITADEL SECURITIES, LLC, APEX CLEARING CORPORATION, TWO SIGNA SECURITIES, LLC, WOLVERINE SECURITIES, LLC, and VIRTU FINANCIAL, INC.,

    Defendants.

_____/

## DEFENDANTS' REPLY IN SUPPORT OF JOINT MOTION TO TRANSFER OR DISMISS

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................... 1

ARGUMENT .................................................................................................................................. 2

I.  THE COURT SHOULD TRANSFER THIS CASE TO THE NORTHERN
    DISTRICT OF CALIFORNIA. ........................................................................................... 2

    A.  This Court Should Exercise Its Discretion to Transfer this Action
        Pursuant to the First-Filed Rule. ............................................................................. 2

    B.  The Balance of Factors That Courts Consider in Determining Whether
        Transfer is Appropriate Weighs in Favor of Transfer. ............................................ 4

        1.  Judicial Economy and the Interests of Justice Favor Transfer. ................... 4

        2.  The Underlying Events Occurred in California, and Witnesses
            and Evidence Are Located There. ................................................................ 5

        3.  Familiarity With the Governing Law Favors Transfer. ................................ 5

        4.  Plaintiff's Choice of Forum and the Relative Means of the
            Parties Are Neutral Factors. .......................................................................... 6

II. ALTERNATIVELY, THE COURT SHOULD DISMISS PLAINTIFF'S
    SLUSA-BARRED COMPLAINT. ..................................................................................... 6

    A.  Plaintiff's Claims Are Based on Alleged Misrepresentations or
        Omissions, or an Alleged "Manipulative or Deceptive Device." .......................... 6

    B.  The Alleged Misrepresentations and Omissions Were Material to the
        Decision to Buy or Sell Securities. ......................................................................... 8

    C.  The Alleged Misconduct Was "in Connection with" the Purchase or
        Sale of "Covered Securities." ................................................................................. 8

III. PLAINTIFF ALSO FAILS TO STATE AN AIDING AND ABETTING
     CLAIM. ............................................................................................................................... 9

    A.  Plaintiff Fails to Allege Actual Knowledge. ........................................................... 9

    B.  Plaintiff Fails to Allege Substantial Assistance. ................................................... 10

CONCLUSION ............................................................................................................................. 10

## TABLE OF AUTHORITIES

**Cases**

*Abreu v. Pfizer, Inc.*,
    2022 WL 481184 (S.D. Fla. Feb. 16, 2022) ................................................................. 4

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ..................................................................................................... 9

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 554 (2007) ..................................................................................................... 9

*Cardenas v. Toyota Motor Corp.*,
    2019 WL 4705843 (S.D. Fla. Sept. 26, 2019) ............................................................. 4

*Chang v. JPMorgan Chase Bank, N.A.*,
    845 F.3d 1087 (11th Cir. 2017) ..................................................................................10

*Chapman v. Progressive Am. Ins. Co.*,
    2017 WL 3124186 (N.D. Fla. July 24, 2017) .............................................................. 3

*Fleming v. Charles Schwab Corp.*,
    878 F.3d 1146 (9th Cir. 2017) .................................................................................7, 8

*Hight v. U.S. Dep't of Homeland Sec.*,
    391 F. Supp. 3d 1178 (S.D. Fla. 2019) ........................................................................ 5

*Hinkle v. Cont'l Motors, Inc.*,
    2017 WL 3131465 (M.D. Fla. July 24, 2017) ............................................................. 6

*Honig v. Kornfeld*,
    339 F. Supp. 3d 1323 (S.D. Fla. 2018) .......................................................................10

*In re Textainer P'ship Sec. Litig.*,
    2005 WL 3801596 (N.D. Cal. Dec. 12, 2005) ............................................................10

*Kelly v. Gerber Prod. Co.*,
    2021 WL 2410158 (S.D. Fla. June 11, 2021) .............................................................. 3

*Kurz v. Fidelity Mgmt. & Research Co.*,
    556 F.3d 639 (7th Cir. 2009) ....................................................................................6, 8

*Lewis v. Scottrade, Inc.*,
    204 F. Supp. 3d 1064 (E.D. Mo. 2016), *aff'd*, 879 F.3d 850 (8th Cir. 2018) ................. 8

*Manuel v. Convergys Corp.*,
    430 F.3d 1132 (11th Cir. 2005) .................................................................................. 2

*Maxon v. Sentry Life Ins. Co.*,
    2018 WL 3850011 (M.D. Fla. Apr. 11, 2018) ........................................................... 5, 6

*Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*,
    547 U.S. 71 (2006) ........................................................................................................ 8, 9

*Newton v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.*,
    135 F.3d 266 (3d Cir. 1998) .............................................................................................. 8

*Rayner v. E*TRADE Fin. Corp.*,
    248 F. Supp. 3d 497 (S.D.N.Y. 2017), *aff'd*, 899 F.3d 117 (2d Cir. 2018) ...................... 8

*Rudolph & Me, Inc. v. Ornament Cent., LLC*,
    2011 WL 3919711 (M.D. Fla. Sept. 7, 2011) .................................................................... 3

*Spice Jazz LLC v. Youngevity Int'l, Inc.*,
    2020 WL 6484640 (S.D. Cal. Nov. 4, 2020) ................................................................... 10

*Zola v. TD Ameritrade, Inc.*,
    889 F.3d 920 (8th Cir. 2018) ............................................................................................ 7

**Statutes**

15 U.S.C. § 78bb(f)(1)(B) ....................................................................................................... 7

28 U.S.C. § 1404 .................................................................................................................... 4

**Other Authorities**

Fed. R. Civ. P. 45(c) ............................................................................................................... 5

iii

Defendants submit this reply memorandum in support of their motion to transfer venue to the United States District Court for the Northern District of California or, in the alternative, dismiss this action pursuant to SLUSA and for failure to state a claim.[1]

## PRELIMINARY STATEMENT

Plaintiff's opposition fails to justify his effort to litigate a duplicative lawsuit in this District despite the existence of the Consolidated Action. There is substantial overlap between the parties and issues presented, which is all that is required for the Court to transfer this action to the Northern District of California under the first-filed rule. Plaintiff's meaningless quibbles with the cases that Defendants cited in their opening brief have no bearing on the application of the first-filed rule to this case, and Plaintiff does not – and cannot – satisfy his burden of demonstrating "compelling circumstances" that would justify a departure from it. The balance of factors that courts typically consider in determining whether transfer is appropriate also weighs in favor of transfer. California is the more convenient forum because Robinhood is headquartered there, and thus it is the locus of operative facts and where relevant sources of proof and witnesses are likely to be located.

Additionally, well-settled case law requires dismissal under SLUSA, which precludes state law class actions based on a misrepresentation or "manipulative or deceptive device" in connection with the purchase or sale of securities. Plaintiff's transparent gamesmanship and superficial changes in the Amended Complaint do nothing to save this case from dismissal. Plaintiff already admitted that his claims are based on alleged misrepresentations and omissions: "*This action concerns the material misrepresentations and omissions* made by Robinhood relating to its customers regarding its revenue sources . . . and relating to *certain false statements* about the execution quality Robinhood achieved for its customers' orders." (Compl. ¶ 15 (emphasis added).) Plaintiff's deletion of explicit references to alleged misrepresentations – purportedly to "eliminate any vagueness" – does not change the nature of his claims and does not avoid dismissal under SLUSA. (Opp'n 16.) And, even in the Amended Complaint, Plaintiff still alleges misrepresentations and omissions. Separately, Plaintiff entirely fails to address SLUSA's "manipulative or deceptive device" prong, even though it is an independent basis to apply SLUSA.

---

[1] Capitalized terms not defined herein have the same meaning as in Defendants' opening brief ("Mot."). (Dkt. No. 51.)

Finally, Plaintiff's opposition brief confirms why his aiding and abetting claim against the Market-Makers should be dismissed. While Plaintiff acknowledges that the law requires him to plead the Market-Makers' "knowledge of the [fiduciary duty] breach by [Robinhood]" and "substantial assistance" (Opp'n 19; *see also* Opp'n 20), Plaintiff points to no allegations in the Amended Complaint that do so. Instead, Plaintiff merely repeats what is alleged in his Amended Complaint without grappling with the pleading deficiencies identified by Defendants, each of which is fatal to his aiding-and-abetting claims. Specifically, Plaintiff attempts to satisfy both "actual knowledge" and "substantial assistance" using a single factual allegation: "[w]hen the [Market Makers] consummated the arrangements, in other words, received order flow . . . and paid Robinhood in accordance with the arrangement, this was the breach coming to fruition." (Opp'n 19.) As discussed in greater detail below, that sole allegation fails to satisfy either the "actual knowledge" or the "substantial assistance" element of his claim.

## ARGUMENT

**I.     THE COURT SHOULD TRANSFER THIS CASE TO THE NORTHERN DISTRICT OF CALIFORNIA.**

    **A.     This Court Should Exercise Its Discretion to Transfer this Action Pursuant to the First-Filed Rule.**

Plaintiff's opposition to the application of the first-filed rule consists almost entirely of failed attempts to distinguish the cases that Defendants cite in their opening brief. (Opp'n 2-8.) Plaintiff misconstrues the holdings of some cases and offers distinctions that make no difference for others. Plaintiff has neither cited to any authority that merits the rejection of the first-filed rule, nor satisfied his burden to demonstrate "*compelling circumstances*" justifying a departure from that rule. *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 (11th Cir. 2005) (emphasis added).

*First*, Plaintiff acknowledges that the Consolidated Action was "filed first," and his assertion that this action is the "first filed of its kind" because it merely names a broader group of defendants makes no difference to the analysis. (Opp'n 2-3; Mot. 5.) The first case that is part of the Consolidated Action was filed in December 2020, nine months before this action was initiated. Any purported differences between the actions do not change that chronology.

*Second*, Plaintiff's claim that his assertion of a Florida-only class somehow renders the parties to the actions dissimilar is incorrect. (Opp'n 3; Mot. 5-6.) Plaintiff's proposed Florida class is fully subsumed within the nationwide class proposed in the Consolidated Action, and there is no justifiable basis for permitting a subset of that class to proceed in a separate forum. *See Kelly v. Gerber Prod. Co.*, 2021 WL 2410158, at *2 (S.D. Fla. June 11, 2021) (finding the parties to be substantially similar where the first-filed action was asserted on behalf of nationwide class and the later-filed action was limited to Florida consumers because those consumers were "included in [the] nationwide class"). What might happen if a class is not certified in the Consolidated Action is of no moment. (Opp'n 3; Mot. 6-7.)

Plaintiff's effort to distinguish the cases that Defendants rely upon concerning the similarity-of-parties requirement falls flat. For example, Plaintiff misconstrues the holding in *Chapman v. Progressive Am. Ins. Co.*, 2017 WL 3124186 (N.D. Fla. July 24, 2017). In that case, the court determined that the first-filed rule applied because "both actions were filed against a common defendant" and there was "overlap between the classes," despite the fact that the later-filed case included "two different defendants." *Chapman*, 2017 WL 3124186, at *2. The same goes for Plaintiff's attempt to distinguish *Rudolph & Me, Inc. v. Ornament Cent., LLC*, 2011 WL 3919711 (M.D. Fla. Sept. 7, 2011). Regardless of the relationship between the additional defendants, the court did not hold that their presence in the later-filed action prevented the application of the first-filed rule. (Opp'n 3.) Instead, the court held that "a precise identity of the parties is not required" and transferred the case because there was "sufficient similarity and overlap." *Rudolph & Me*, 2011 WL 3919711, at *2. That is the case here, too. *See Kelly*, 2021 WL 2410158, at *1 ("The issues and the parties need not be identical but must overlap.").

*Third*, the differences between the claims asserted do not prevent the application of the first-filed rule; the focus is on the similarity of the underlying conduct at issue. (Opp'n 5-6; Mot. 7-8.) "Raising new claims in the second action does not defeat the first-to-file rule. Differences between issues 'have no bearing so long as their resolutions turn on similar determinations of fact.'" *Kelly*, 2021 WL 2410158, at *1 (citation omitted). The "relevant inquiry is whether the actions are largely based on the same conduct and the issues overlap." *Id.* at *2. This case is obviously based on the same conduct giving rise to the Consolidated Action; many of Plaintiff's allegations are copied verbatim from the CAC.

3

(*Compare* CAC ¶¶ 22-25, 27-28, 30-35, 49-63, 76-80, 82 *with* AC ¶¶ 3, 22-23, 25-41, 43-46.)[2] And, while Plaintiff claims that the "majority" of his causes of action are aiding and abetting claims against the Market-Maker Defendants, those claims require that Plaintiff first establish that Robinhood breached a duty. (Opp'n 5; Mot. 7.)

Plaintiff does not – and cannot – carry his burden of showing that compelling circumstances justify an exception to the first-filed rule. (Opp'n 7.) None of the factors that courts typically consider to be compelling circumstances, such as "bad faith negotiations, an anticipatory suit, and forum shopping," are present here. *Abreu v. Pfizer, Inc.*, 2022 WL 481184, at *4 (S.D. Fla. Feb. 16, 2022).

### B. The Balance of Factors That Courts Consider in Determining Whether Transfer is Appropriate Weighs in Favor of Transfer.

Contrary to Plaintiff's assertion, the balance of factors courts consider in evaluating whether transfer is appropriate under 28 U.S.C. § 1404 weighs strongly in favor of transfer to the Northern District of California.[3]

#### 1. Judicial Economy and the Interests of Justice Favor Transfer.

Plaintiff's claim that this action would not automatically be consolidated with the Consolidated Action because the California court would need to make that determination is incorrect. (Opp'n 14; Mot. 8-9.) The court has already determined that related actions shall be consolidated. (Mot. 3; Fetzer Decl. Ex. 1 at 5.)

The Court should also reject Plaintiff's attempt to discount the likelihood of inconsistent rulings and duplicative discovery requests, which relies on the flawed assertion that the two actions do not substantially overlap. (Opp'n 14.) In fact, the cases are based on substantially identical allegations regarding whether Robinhood complied with the duty of best execution.

---

[2] *Cardenas v. Toyota Motor Corp.*, 2019 WL 4705843 (S.D. Fla. Sept. 26, 2019), does not require a contrary result. (Opp'n 5-6.) In that case, the court concluded that the new defendants and claims gave the later-filed lawsuit "a significantly different tenor" than the earlier filed action. *Cardenas*, 2019 WL 4705843, at *3. Here, by contrast, the parties are sufficiently similar, and there is a substantial overlap between the issues presented.

[3] On February 18, 2022, the court entered an order in the Consolidated Action dismissing the complaint and setting a deadline of March 8, 2022 for the Lead Plaintiff to amend. *In re Robinhood Order Flow Litig.*, Case No. 20-cv-9328-YGR (Dkt. No. 91).

      2.      **The Underlying Events Occurred in California, and Witnesses and Evidence Are Located There.**

Contrary to Plaintiff's assertion, Defendants are not asking the Court to assume that the operative events occurred within California – that is clear from the face of the Amended Complaint. (Opp'n 10; Mot. 9-10.) Robinhood is headquartered in Menlo Park, California, and Plaintiff does not identify any conduct by Robinhood related to its duty of best execution outside of that headquarters. *See Maxon v. Sentry Life Ins. Co.*, 2018 WL 3850011, at *3 (M.D. Fla. Apr. 11, 2018) (locus of operative facts weighed "heavily in favor of transfer" because the allegedly improper actions "were made at Defendant's headquarters" in Wisconsin, not Florida). As such, common sense dictates that many of the witnesses and other sources of proof would also be located in California. Plaintiff's residence in Florida is of little, if any, importance to the operative facts, which center on Defendants' conduct. (Opp'n 7.) *See Hight v. U.S. Dep't of Homeland Sec.*, 391 F. Supp. 3d 1178, 1187 (S.D. Fla. 2019) (granting motion to transfer despite plaintiff's residence in the forum because the "operative facts underlying the claim did not take place" there). Moreover, the fact that the Market-Maker Defendants are not headquartered in California does not support his argument because the Market-Maker Defendants are also not headquartered in Florida. (Opp'n 10.) As between California and Florida, California is the more convenient forum.

Although the Federal Rules permit nationwide service of subpoenas, a witness may only be compelled to attend trials, hearings and depositions within 100 miles of where they reside or work. Fed. R. Civ. P. 45(c). Thus, the Northern District of California is more likely to be able to successfully compel live testimony from non-party witnesses with relevant knowledge, such as former Robinhood employees, who are more likely to reside in California than Florida.

      3.      **Familiarity With the Governing Law Favors Transfer.**

Plaintiff's conclusory assertions about the applicability of Robinhood's Customer Agreement should be rejected. (Opp'n 11-12; Mot. 10.) All customers must agree to abide by the terms of Robinhood's customer agreement before they can place any trades on its platform. That agreement states that claims like those asserted in the Amended Complaint

5

are governed by California law. (Mot. 10.) The case should be transferred to the Northern District of California because it is more familiar with that law.

Nor is there any merit to Plaintiff's claim that Florida law would apply to the claims asserted against the Market-Maker Defendants. (Opp'n 12.) Plaintiff does not cite any law to support that assertion or engage in a choice-of-law analysis. The mere fact that Plaintiff resides in Florida does not mean that Florida law will apply. *See Hinkle v. Cont'l Motors, Inc.*, 2017 WL 3131465, at *5 (M.D. Fla. July 24, 2017) (the plaintiffs' "place of residence alone is not sufficient to resolve the choice-of-law inquiry").

### 4. Plaintiff's Choice of Forum and the Relative Means of the Parties Are Neutral Factors.

Plaintiff's residence in Florida does not entitle his choice of forum to any deference because the locus of operative facts is in California, as explained above. (Opp'n 13-14; Mot. 11.) Nor does the relative means of the parties bear much weight. Although Plaintiff criticizes Defendants for not submitting evidence regarding the means of the parties, no such evidence is required. (Opp'n 11.) As a matter of law, the "relative means" of the parties is "essentially irrelevant" in class actions because "counsel are financing the case on behalf of Plaintiffs, whose modest means relative to those of Defendant are of absolutely no moment." *Maxon*, 2018 WL 3850011, at *4 (internal quotation omitted).

## II. ALTERNATIVELY, THE COURT SHOULD DISMISS PLAINTIFF'S SLUSA-BARRED COMPLAINT.

Plaintiff does not dispute that this suit is a "covered class action" based on state law claims for purposes of SLUSA, and his arguments with respect to the other elements are meritless and should be rejected. (Opp'n 15-18; Mot. 11-16.) Every single Court of Appeals to have addressed the issue has determined that class actions based on alleged breaches of the duty of best execution involving fraud or nondisclosure are precluded by SLUSA. (Mot. 12.) Plaintiff offers no reason why this case warrants a different result. Plaintiff "ha[s] a federal securities claim, or he ha[s] nothing." *Kurz v. Fidelity Mgmt. & Research Co.*, 556 F.3d 639, 641-42 (7th Cir. 2009).

### A. Plaintiff's Claims Are Based on Alleged Misrepresentations or Omissions, or an Alleged "Manipulative or Deceptive Device."

Plaintiff has no response to the fact that he is engaging in artful pleading and elevating substance over form. Plaintiff's assertion that he deleted explicit references to

6

alleged misrepresentations and omissions "to eliminate any vagueness" is absurd on its face. (Opp'n 16.) So is the claim that the allegations of misrepresentations and omissions remaining in the Amended Complaint should be "considered background." (Opp'n 16.) Plaintiff's gamesmanship is obvious, and none of his superficial changes in the Amended Complaint can avoid his prior admission: "*This action concerns the material misrepresentations and omissions* made by Robinhood relating to its customers regarding its revenue sources . . . and relating to *certain false statements* about the execution quality Robinhood achieved for its customers' orders." (Compl. ¶ 15 (emphasis added).) Courts have consistently rejected such gamesmanship, and this Court should do the same. (Mot. 14-15 (citing cases).) And, although Plaintiff removes certain references to alleged misrepresentations, he continues to allege that Robinhood failed to disclose allegedly poor execution quality, made inaccurate statements about execution quality compared to its competitors and failed to disclose that PFOF was a primary source of revenue. (Mot. 15.) For example, Plaintiff still alleges that Robinhood profited from "unsuspecting customers," "without first *disclosing* that its primary revenue source comes to the disadvantage of these same customers." (AC ¶ 14 (emphasis added).)

Moreover, as Plaintiff admits, the "gravamen" of his complaint is that Robinhood breached its duty "when it chose to put its interest before its customers' interest by choosing to get paid more." (Opp'n 16.) Numerous courts have held that such claims fall squarely within the scope of SLUSA. *See, e.g.*, *Zola v. TD Ameritrade, Inc.*, 889 F.3d 920, 924 (8th Cir. 2018) (holding that SLUSA precluded action based on broker's "failure to disclose the fact that it was selling its order flow to the highest bidders," notwithstanding that plaintiffs "carefully avoided allegations that explicitly sounded in fraud"). (Mot. 13-15 (collecting cases).) The comment Plaintiff cites in *Fleming v. Charles Schwab Corp.*, 878 F.3d 1146 (9th Cir. 2017), that an alleged breach of the duty of best execution stemming from an outage to a broker's trading system might not trigger SLUSA's application, has no relevance here. (Opp'n 15.) As in *Fleming*, the "substance" of Plaintiff's allegations is that Robinhood purportedly "deceived" customers "into believing it would deliver best execution of their trades." 878 F.3d at 1154.

In a glaring omission, Plaintiff fails to address SLUSA's "manipulative or deceptive device" prong, 15 U.S.C. § 78bb(f)(1)(B), which affords an independent basis to apply

7

SLUSA. (Mot. 13-15.) Other courts confronted with substantially identical allegations have treated them as a "manipulative or deceptive device" and applied SLUSA. *See Rayner v. E\*TRADE Fin. Corp.*, 248 F. Supp. 3d 497, 503 (S.D.N.Y. 2017), *aff'd*, 899 F.3d 117 (2d Cir. 2018) (holding that the plaintiff's claims implicated E\*TRADE's "use or employment of a manipulative or deceptive device . . . within the meaning of SLUSA" where the plaintiff alleged that E\*TRADE "routed orders to 'maximize kickback revenue' in violation of its duty of best execution"); *Lewis v. Scottrade, Inc.*, 204 F. Supp. 3d 1064, 1068 (E.D. Mo. 2016), *aff'd*, 879 F.3d 850 (8th Cir. 2018) (holding that SLUSA precluded suit where the gravamen of the complaint was that Scottrade "engaged in deceptive conduct in relation to its order-routing practices").

### B. The Alleged Misrepresentations and Omissions Were Material to the Decision to Buy or Sell Securities.

Plaintiff's assertion that the alleged misconduct was not material to an investor's decision to buy or sell securities has been consistently rejected by courts. (Opp'n 17.) Contrary to Plaintiff's argument about the sequence of the purported trades and breach, a broker-dealer who accepts an order "while intending to breach" the duty of best execution "makes a misrepresentation that is material to the purchase or sale." *Newton v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.*, 135 F.3d 266, 269 (3d Cir. 1998); *see also Fleming*, 878 F.3d at 1155 ("The net price obtained when purchasing or selling a security is plainly material to a buyer or seller."). The cases cited by Plaintiff are not best execution cases and have no relevance here. (Opp'n 17.)

### C. The Alleged Misconduct Was "in Connection with" the Purchase or Sale of "Covered Securities."

Plaintiff offers no response to the numerous decisions holding that alleged violations of the duty of best execution satisfy SLUSA's "in connection with" requirement. (Opp'n 17-18.) *See Fleming*, 878 F.3d at 1155-56 (holding "in connection with" requirement satisfied); *Kurz*, 556 F.3d at 641 (finding argument "that the duty of best execution is not in connection with the purchase or sale of securities . . . is frivolous, given *Dabit*"); *Rayner*, 248 F. Supp. 3d at 504 (holding that alleged breach of best execution duty "plainly coincided with the securities transactions at issue"). There is no obligation to show that the alleged deception "led to an order" (Opp'n 18); it is enough for the deception to "coincide"

8

with a securities transaction. *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 83-85 (2006). That standard is easily satisfied here.

The "covered securities" element is also satisfied. Plaintiff's claim that SLUSA does not apply because the Amended Complaint should be read to implicate both covered and uncovered securities makes no sense. (Opp'n 18.) "A 'covered security' is one traded nationally and listed on a regulated national exchange." *Dabit*, 547 U.S. at 83. Here, Plaintiff expressly alleges that the securities at issue could go to "national exchanges" and that price improvements are based on the "national best bid and offer." (AC ¶¶ 22, 25.) Plaintiff alleges no facts that address uncovered securities.

### III. PLAINTIFF ALSO FAILS TO STATE AN AIDING AND ABETTING CLAIM.

#### A. Plaintiff Fails to Allege Actual Knowledge.

As to actual knowledge, Plaintiff agrees that he must allege facts showing that the Market-Makers "were knowledgeable that Robinhood was not providing best execution to its customers." (Opp'n 19.) Yet Plaintiff then fails to sufficiently address the Market-Makers' argument that he has failed to meet that standard.

On this score, Plaintiff simply says that the Market-Makers "agreed to pay Robinhood less money in price improvement, and more money for order flow" (AC ¶¶ 85, 102, 125, 142, 161) or agreed to an "20/80 split of the value between price improvement and payment for order flow." (AC ¶¶ 32, 80, 98, 119, 138, 157.) From there, he leaps to the conclusion that somehow the Market-Makers therefore must have known that Robinhood violated its duty of best execution. (*Id.* ¶¶ 88, 111, 128, 149, 168.)

But such a leap is not permissible pursuant to *Twombly* and *Iqbal*, which require that Plaintiff allege concrete facts "plausibly suggesting, not merely consistent with . . . liability." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 545 (2007). Plaintiff points to no well-pleaded facts in his Amended Complaint "plausibly suggesting" that the Market-Makers actually knew that Robinhood's purported split between price improvement and payment for order flow meant that Robinhood was not providing best execution to its customers. While Plaintiff points to its allegation that the Market-Makers knew that Robinhood was breaching its duty "by placing [Robinhood's] financial interests over that of its customers" (Opp'n 19), that bare-bones allegation is wholly conclusory and again says nothing about a failure to comply with the duty of best

9

execution. These failures doom Plaintiff's claim. *See In re Textainer P'ship Sec. Litig.*, 2005 WL 3801596, at *16 (N.D. Cal. Dec. 12, 2005) (finding no aiding and abetting liability where Plaintiff "allege[d] no facts to support an inference that [Defendant] had actual knowledge of the alleged breach" of fiduciary duty); *Honig v. Kornfeld*, 339 F. Supp. 3d 1323, 1345 (S.D. Fla. 2018) (finding plaintiffs' aiding and abetting claims to be insufficient due to failure to allege that Defendants knew of fraudulent scheme and the resulting breach of fiduciary duty).

### B. Plaintiff Fails to Allege Substantial Assistance.

As to substantial assistance, Plaintiff's opposition fails to shed any light on how Market-Makers "affirmatively assist[ed]" or "help[ed] conceal" Robinhood's misconduct, "thereby enabling the breach to occur." *See Chang v. JPMorgan Chase Bank, N.A.*, 845 F.3d 1087, 1098 (11th Cir. 2017). Instead, Plaintiff turns to the same fact that underpins his "actual knowledge" argument – the Market-Makers "consummat[ed]" agreements with Robinhood. That allegation is wholly insufficient for the reasons explained in Defendants' opening brief.[4] Simply stated, Plaintiff fails to allege that Defendants enabled the purported breach.

Although Plaintiff disclaims that he is "simply alleg[ing] that Robinhood and the MM were doing business together," he fails to point to any specific allegations otherwise. (Opp'n 20.) He instead resorts to arguing that "actual knowledge of furthering a breach makes an 'ordinary business transaction' constitute substantial assistance." (*Id.*) As demonstrated above, however, Plaintiff fails to plead actual knowledge of any specific wrong on the part of the Market-Makers.

### CONCLUSION

For the reasons set forth above, Defendants request that this action be transferred to the Northern District of California or, in the alternative, dismissed with prejudice.

---

[4] In attempting to distinguish *Spice Jazz LLC v. Youngevity Int'l, Inc.*, 2020 WL 6484640 (S.D. Cal. Nov. 4, 2020), Plaintiff shows exactly why that action undermines any claim of substantial assistance here. Assuming the truth of the allegations in the Amended Complaint, Plaintiff would have suffered the same harm irrespective of the actions of any single Market-Maker. That is, no Market-Maker can be considered the but-for cause of the alleged harm, because Robinhood's alleged 20/80 split between price improvement and PFOF would have continued even in the absence of any single Market-Maker.

Dated:  March 4, 2022

Respectfully submitted,

By: /s/ Ryan T. Thornton
Grace L. Mead (Florida Bar No. 49896)
Ryan T. Thornton (Florida Bar No. 99195)
**STEARNS WEAVER MILLER**
Museum Tower
150 West Flagler Street, Suite 2200
Miami, Florida 33130
Telephone: (305) 789-3559
Email: gmead@stearnsweaver.com
Email: rthornton@stearnsweaver.com

Maeve O'Connor (*pro hac vice*)
Elliot Greenfield (*pro hac vice*)
Brandon Fetzer (*pro hac vice*)
**DEBEVOISE & PLIMPTON LLP**
919 Third Avenue
New York, New York 10022
Telephone: (212) 909-6000
Email: mloconnor@debevoise.com
Email: egreenfield@debevoise.com
Email: bfetzer@debevoise.com

*Counsel for Defendant Robinhood Financial LLC*

By: /s/ Ian Ross
Ian Ross (Florida Bar No. 91214)
**STUMPHAUZER FOSLID SLOMAN ROSS & KOLAYA, PLLC**
One Biscayne Tower
Two S. Biscayne Boulevard, Suite 1600
Miami, Florida 33131
Telephone: (305) 614-1400
Email: iross@sfslaw.com

Andrew Gordon (*pro hac vice*)
Jessica Carey (*pro hac vice*)
Kristina Bunting (*pro hac vice*)
**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
1285 Avenue of the Americas
New York, New York 10019
Telephone: (212) 373-3000
Email: agordon@paulweiss.com
Email: jcarey@paulweiss.com

11

Email: kbunting@paulweiss.com

*Counsel for Defendant Virtu Financial Inc.*

By: */s/ Angela D. Daker*
Angela D. Daker (Florida Bar No. 681571)
**WHITE & CASE LLP**
200 South Biscayne Blvd., Suite 4900
Miami, Florida 33131
Telephone: (305) 371-2700
Email: adaker@whitecase.com

J. Mark Gidley (*pro hac vice*)
**WHITE & CASE LLP**
701 Thirteenth Street, N.W.
Washington, D.C. 20005
Telephone: (202) 626-3600
Email: mgidley@whitecase.com

Jack E. Pace III (*pro hac vice*)
Bryan D. Gant (*pro hac vice*)
**WHITE & CASE LLP**
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 819-8200
Email: jpace@whitecase.com
Email: bgant@whitecase.com

*Counsel for Apex Clearing Corporation*

By: */s/ Louise McAlpin*
Louise McAlpin (Florida Bar No. 983810)
Allison Kernisky (Florida Bar No. 41160)
**HOLLAND & KNIGHT LLP**
701 Brickell Avenue, Suite 3300
Miami, Florida 33131
Telephone: (305) 374-8500
Email: louise.mcalpin@hklaw.com
Email: allison.kernisky@hklaw.com

Roger A. Cooper (*pro hac vice*)
Jared Gerber (*pro hac vice*)
Miranda Gonzalez (*pro hac vice*)
**CLEARY GOTTLIEB STEEN & HAMILTON LLP**

One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Email: racooper@cgsh.com
Email: jgerber@cgsh.com
Email: mirgonzalez@cgsh.com

*Counsel for Defendant Two Sigma Securities, LLC*

/s/ John F. O'Sullivan
John F. O'Sullivan (Florida Bar No. 143154)
**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
2601 South Bayshore Drive, Suite 1550
Miami, Florida 33133
Telephone: (305) 439-5008
johnosullivan@quinnemanuel.com

*Counsel for Defendant Citadel Securities LLC*

/s/ James D. Gassenheimer
James D. Gassenheimer (Florida Bar No. 959987)
**BERGER SINGERMAN LLP**
1450 Brickell Avenue, Suite 1900
Miami, Florida 33131
Telephone: (305) 755-9500
Facsimile: (305) 714-4340
Email: jgassenheimer@bergersingerman.com

Matthew J. Dolan (*pro hac vice*)
**SIDLEY AUSTIN LLP**
1001 Page Mill Road Building 1
Palo Alto, California 94304
Telephone: (650) 565-7106
mdolan@sidley.com

*Counsel for Defendant Wolverine Securities, LLC*

13

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 4, 2022, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached service list in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive Notices of Electronic Filing.

By: */s/ Ryan T. Thornton*
Ryan T. Thornton

SERVICE LIST

Michael A. Citron, Esq.
Florida Bar No.: 105083
Kristen D. Montgomery, Esq.
Florida Bar No.: 1003495
MAC LEGAL, P.A.
4601 Sheridan Street, Ste. 205
Hollywood, Florida 33021
Telephone: (954) 395-2954
Michael@maclegalpa.com – Correspondence
KMontgomery@maclegalpa.com
Service@maclegalpa.com – Service Address

Igor Hernandez, Esq.
Florida Bar No.: 106386
CORNISH HERNANDEZ GONZALEZ, PLLC
2525 Ponce de Leon Blvd, Suite 300
Coral Gables, Florida 33134
Telephone: (305) 780-6058
service@CHGLawyers.com
ihernandez@chglawyers.com

Ely R. Levy, Esq.
Florida Bar No.: 15452
Venessa Valdes Solis, Esq.
Florida Bar No.: 77122
LEVY & PARTNERS, PLLC
3230 Stirling Road, Suite 1
Hollywood, Florida 33021
Telephone: (954) 727-8570
elevy@lawlp.com – Service Address
venessa@lawlp.com – Service Address
Maritza@lawlp.com – Service Address